```
         UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF MISSISSIPPI
                JACKSON DIVISION


BARBOUR INTERNATIONAL, INC.                            PLAINTIFF


VS.                            CIVIL ACTION NO. 3:07CV257TSL-JCS


PERMASTEEL, INC. F/K/A
PERFECTGLO, INC. F/K/A
BAKER SALES, INC.                                      DEFENDANT
```

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Permasteel, Inc. to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure on, in the alternative, to dismiss for failure to state a claim pursuant to Rule 12(b)(6). Plaintiff Barbour International has responded to the motion and the court, having considered the memoranda of authorities submitted by the parties, concludes that the motion is not well taken and should be denied.

Plaintiff Barbour, a Mississippi corporation with its principal place of business in Brandon, Mississippi, filed the complaint in this cause in the Chancery Court of Rankin County, Mississippi, on April 27, 2007 against defendant Permasteel, a California corporation with its principal place of business in Chino, California. The case was removed pursuant to 28 U.S.C. § 1446 on the basis of diversity jurisdiction. According to the complaint, Barbour is in the business of developing,

manufacturing, producing, marketing and selling various types of indoor and outdoor grilling products under the registered name "Bayou Classic." Plaintiff alleges that in April 2004, it entered into a Confidentiality and Nondisclosure Agreement with defendant Permasteel pursuant to which Permasteel was to act as Barbour's agent for the purpose of developing, producing and marketing Barbour's exclusive products, which included acting as Barbour's agent between Barbour and the factories where the products would be manufactured. Barbour placed its first order with Permasteel in August 2004, and the parties continued to operate under the contract until Barbour eventually terminated the contract on March 23, 2007.

According to the complaint, in May 2004, at the commencement of the parties' relationship, Barbour provided Permasteel with a list of new product projects, which included a portable grill, and Barbour thereafter "developed, advertised, marketed and produced, with the assistance and input of its contractual agent, Permasteel, a portable charcoal cooking grill" which it sold as the "Fold & Go" grill under Barbour's "Bayou Classic" registered name. Barbour alleges that following its termination of the agreement in March 2007, it discovered that Permasteel had solicited Barbour's largest customer, Home Depot, to purchase an identical copy of Barbour's "Fold & Go" grill, in violation of the parties' Confidentiality and Nondisclosure Agreement, which

2

required that the products produced and/or sold by Barbour were to be considered Barbour's exclusive products as between the parties. It further learned that Permasteel had directed the factory which had been manufacturing Barbour's "Fold & Go" product to halt production of the product, and thereby interfered with Barbour's business.  Barbour also alleged that Permasteel has wrongfully withheld shipping documents on other containers of Barbour's products shipped from China, thereby preventing Barbour from receiving payment for the products.

"A federal court sitting in diversity may exercise personal jurisdiction only to the extent permitted a state court under state law." Paz v. Brush Engineered Materials, Inc., 445 F.3d 809, 812 (5th Cir. 2006) (citing Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 424 (5th Cir. 2005)).  "The court may only exercise jurisdiction if: '(1) the state's long-arm statute applies, as interpreted by the state's courts, and (2) if due process is satisfied under the 14th Amendment to the federal Constitution.'" Id. (quoting Allred v. Moore & Peterson, 117 F.3d 278 (5th Cir. 1997)).  The plaintiff has the burden of establishing personal jurisdiction. Guidry v. U.S. Tobacco Co., 188 F.3d 619, 625 (5th Cir. 1999).

Under Mississippi's long-arm statute, courts of this state may exercise personal jurisdiction over a nonresident defendant if the defendant has entered a contract with a Mississippi resident

3

to be performed in Mississippi, or has committed a tort in Mississippi, or is conducting business in Mississippi.[1] The due process clause "requires satisfaction of a two-prong test in order for a federal court to properly exercise jurisdiction:  (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with 'traditional notions of fair play and substantial justice.'" Freudensprung v. Offshore Technical Servs., Inc., 379 F.3d 327, 343 (5th Cir. 2004) (citing Asarco, Inc. v. Glenara, Ltd., 912 F.2d 784 (5th Cir. 1990), and International Shoe Co. v. Washington, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).  This "minimum contacts" prong is further subdivided into contacts that give rise to specific jurisdiction and those that give rise to general jurisdiction.  The former arises when "(1) the defendant purposely directed its activities toward the forum state or purposely

---

[1] Mississippi's long-arm statute provides:
Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.  Service of summons and process upon the defendant shall be had or made as is provided by the Mississippi Rules of Civil Procedure.
Miss. Code Ann. § 13-3-57.

availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendants contacts with the forum state." Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). "When a cause of action does not arise out of a foreign defendant's purposeful contacts with the forum, however, a court may exercise general jurisdiction when the defendant has engaged in 'continuous and systematic contacts' in the forum." Id. Plaintiff does not suggest that Permasteel has had "continuous and systematic" contacts with Mississippi, and instead, it contends an exercise of specific jurisdiction is warranted.

Where the district court rules on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff is only required to make a prima facie case that jurisdiction is proper. Paz, 445 F.3d at 812 (citing Quick Technologies, Inc. v. Sage Group, PLC, 313 F.3d 338, 343 (5th Cir. 2002)). In such cases, in determining whether a prima facie case for jurisdiction has been made, "uncontroverted allegations in the plaintiff's complaint must be taken as true," Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir. 2005) (citations omitted), but the court is not limited to consideration of only the assertions in the plaintiff's complaint; rather, it may also "consider the contents of the record at the time of the motion,

5

including affidavits . . .,'" Paz, 445 F.3d at 812 (quoting Quick Technologies). In doing so, "'conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists.'" Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir. 1990).

Here, Barbour appears to assert that jurisdiction is proper under the contract, tort and doing business prongs of the long-arm statute, and that due process requirements are satisfied. In its complaint, Barbour plainly alleges that Permasteel entered a contract with Barbour, a Mississippi resident; and while it may not be apparent from the allegations in the complaint itself that part of the parties' performance was to take place in Mississippi, Barbour has submitted an affidavit accompanying his response to Permasteel's motion which sheds light on this issue.

In his affidavit, Rodney Barbour, president of defendant Barbour, states that in March 2004, a representative of Permasteel (at the time known as Baker Sales) contacted Barbour requesting a meeting to discuss Permasteel's working for and acting as Barbour's agent for purposes of consulting, developing, aiding in the design of, producing and manufacturing Barbour's products. Thereafter, Baker's president, Woody Baker, traveled to Mississippi to discuss and negotiate the terms of a relationship between the companies, in which discussion Mr. Baker proposed that

his company would arrange for the manufacture by Chinese factories of Barbour's products and would handle the arrangements for shipping the products to Barbour's corporate/distribution headquarters in Mississippi.  Mr. Barbour states that Baker agreed that all purchase orders for products would originate from Mississippi; that all payments would be made from Mississippi; and that Baker would complete the necessary transactions and forward to Mississippi all necessary shipping documents for all products shipped to Mississippi.  He further attests that over the parties' three-year relationship, Permasteel arranged for shipment to Mississippi of 98% of the over three million total units purchased by Barbour through Permasteel (included among which was the "Fold & Go" grill).  Regarding the "Fold & Go" grill that is the primary subject of Barbour's complaint, Mr. Barbour states that Permasteel assisted him in the development of the design of the grill and that in January 2006, Permasteel's representatives Hazel Hu and Liping Zhao traveled to Mississippi and presented him with a grill design, which was thereafter manufactured and sold beginning in November 2006.

In its motion to dismiss, Permasteel disputes Barbour's version of the facts and the validity of his claims, taking the position that Permasteel, not Barbour, developed the portable steel grill known as the "Fold & Go," which it thereafter arranged to have manufactured in China.  Permasteel claims that although it

agreed to distribute the grill through Barbour, the "Fold & Go" was not created by Barbour and is not a product covered by the parties' agreement.  Beyond this, Permasteel also denies that any part of the agreement was to be performed in Mississippi, and disputes, as well, Barbour's claim that the contract was entered into in Mississippi.  In support of its position, Permasteel has presented the declaration of Xiaorong (Hazel) Hu, an executive vice-president of the company, in which she states not only that Permasteel has never had any physical presence in this state,[2] but also, with reference to the dealings with Barbour in particular, that during the time Permasteel has worked with Barbour, it has not "undertaken any actions within the state of Mississippi in relation to its work with Barbour."  She states further that while she did travel to Mississippi twice during the contract term and met with Rodney Barbour each time, she and Mr. Barbour had only "generalized discussions" and did not "talk about the Agreement or either side's performance of the Agreement."

Even assuming for the sake of argument that Permasteel took no actions "within the state of Mississippi" under the contract,

---

[2]     Hu states, for example, that Permasteel has no office in Misssissippi and no manufacturing plant, distribution center or other location in Mississippi where it maintains employees or does business; it pays no taxes in Mississippi; it is not registered to do business in Mississippi; it does not own or lease any real or personal property in Mississippi; it has no bank accounts in Mississippi; it has no post office box or other facility for receiving mail in Mississippi; and it has no telephone listing in Mississippi.

as claimed by Hu, Mr. Barbour plainly states in his affidavit that Permasteel both arranged for shipment of nearly all of the products manufactured for Barbour under the contract <u>to Mississippi</u> and that under the contract, Permasteel was to forward all shipping documents for the products <u>to Mississippi</u>, which it did, except as to a few final shipments which are a subject of Barbour's complaint in this cause.  Thus, according to Mr. Barbour's affidavit, which this court accepts as true for present purposes, the parties contemplated that the contract would be performed in part in Mississippi and the contract was, in fact, performed in part in Mississippi.  Thus, the court has no difficulty concluding that the long-arm statute is satisfied.[3]

So, too, in the court's opinion, are the requirements of due process met.  Of course, the mere fact that Permasteel contracted with a Mississippi company is not sufficient basis for finding it had the minimum contacts required for an exercise of personal jurisdiction.  Rather, the court must "look to the factors of prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing to determine whether [Permasteel] purposefully established minimum contacts with the forum."  <u>Stuart v. Spademan</u>, 772 F.2d 1185, 1193 (5th Cir. 1985).

---

[3] The court therefore need not consider whether Barbour has established applicability of the tort or doing business prongs.

As noted supra, Hu has asserted in her declaration that she made only two informal trips to Mississippi and that she never discussed the parties' agreement with Mr. Barbour during those trips. However, Mr. Barbour claims otherwise in his affidavit. According to the complaint and Mr. Barbour's affidavit, one aspect of the parties' agreement involved Permasteel's assisting Barbour in the development of its products, and one of the products Barbour was developing was a portable charcoal grill; and this, he claims, was a project on which Permasteel was providing assistance under the contract. Mr. Barbour asserts that Hu traveled to Mississippi to present him with a grill design.

In addition, Mr. Barbour claims in his affidavit that Baker Sales, Permasteel's predecessor, actually solicited Barbour's business in the first place by contacting Mr. Barbour in Mississippi and proposing a business relationship between the two companies, and Woody Baker of Baker Sales traveled to Mississippi to negotiate the terms of the parties' eventual agreement. Permasteel does not dispute Barbour's assertion in this regard, and even if it did, the court, for purposes of evaluating whether Barbour had made its prima facie showing, would accept Barbour's proof on the issue. These contacts by Baker are certainly relevant, as the Fifth Circuit has held that the jurisdictional contacts of a predecessor corporation may properly be imputed to its successor corporation, consistent with due process. Patin v. Thoroughbred Power Boats Inc., 294 F.3d 640, 653 (5th Cir. 2002).

10

"The theory underlying these cases is that, because the two corporations . . . are the same entity, the jurisdictional contacts of one are the jurisdictional contacts of the other for the purposes of the International Shoe due process analysis." Id.

Thus, the evidence here is to the effect that Permasteel's predecessor initiated contact with Barbour in Mississippi for the specific purpose of soliciting Barbour's business; that Baker's president thereafter traveled to Mississippi to discuss his proposal with Barbour and to negotiate what became the parties' contract that is at issue in this case; that pursuant to this contract, Permasteel arranged for shipments of large quantities of products to Mississippi; and that a Permasteel representative traveled to Mississippi to present to Barbour the design for the grill that is at the center of the parties' controversy.

Finally, it is undisputed that the parties' contract provides that it is governed by Mississippi law. The Fifth Circuit has observed that while a choice-of-law provision should not be considered alone sufficient to confer jurisdiction, neither should such a provision be ignored, Electrosource, Inc. v. Horizon Battery Techs, Ltd., 176 F.3d 867, 873 (5th Cir. 1999), and indeed, such a provision "can be helpful in determining whether there is personal jurisdiction." Renoir v. Hantman's Associates, Inc., 2007 WL 954321, 2-3 (5th Cir. March 27, 2007).

In the court's opinion, given all these facts, and particularly in light of the fact that Permasteel, through its

11

predecessor, actively solicited Barbour's business, knowing it was affiliating itself with a Mississippi company, it is reasonable and fair that Permasteel be held subject to in personam jurisdiction in this forum. Cf. Loumar, Inc. v. Smith, 698 F.2d 759, 763 (5th Cir. 1983) (finding Maryland seller's contacts with Texas forum insufficient where Texas citizen placed order and Maryland company shipped product to Texas, observing, inter alia, that seller "did not reach out to [buyer] in Texas for business and shipment of goods to Texas was "an isolated transaction, initiated by (the Texas buyer)"). Accordingly, Permasteel's motion to dismiss for lack of personal jurisdiction will be denied.

In addition to contending that it is not subject to personal jurisdiction in this forum, Permasteel argues that Barbour's complaint should be dismissed under Rule 12(b)(6) because it "merely requests remedies" and does not clearly identify the actual legal claims Barbour is asserting. While Barbour's complaint is presented as a complaint for injunctive relief, the court has no difficulty discerning from the complaint that Barbour is asserting claims for breach of contract and tortious interference with business relations. In the court's opinion, the complaint is adequate, and the motion to dismiss, therefore, not well taken. See Bell Atlantic Corp. v. Twonbly, – U.S. – , 127 S.

Ct. 1955 (2007) (viable complaint must include "enough facts to state a claim to relief that is plausible on its face").[4]

Based on the foregoing, it is ordered that defendants' motion to dismiss is denied.

SO ORDERED this 2nd day of August, 2007.

                                                    /s/Tom S. Lee
                                                    UNITED STATES DISTRICT JUDGE

---

[4] The court does note that Barbour has indicated in his response an intention to seek leave to file an amended complaint to seek damages, in addition to injunctive relief.

13